# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdikani A. Nour,<br><br>        Petitioner,<br><br>v.<br><br>Jefferson B. Sessions III, *Attorney General*;<br>John Kelly, *Secretary of Department of Homeland Security*; Jason Sieving, *U.S. ICE Field Office for the St. Paul Field Office*; and Warden of Immigration Detention Facility,<br><br>        Respondents. | Case No. 0:16-cv-02944-JRT-KMM<br><br>**REPORT AND RECOMMENDATION** |

Abdikani Nour, #010610, Sherburne County Jail, 13880 Business Center Dr., Elk River, MN 55330, petitioner pro se

Ana H. Voss / D. Gerald Wilhelm, Assistant U.S. Attorneys, counsel for respondents

      In this habeas proceeding, Abdikani Nour, a Somali man who has been ordered removed from the United States by Immigration and Customs Enforcement ("ICE"), asserts that his continued detention pending removal is unconstitutional. Pet., ECF No. 1. For the reasons set forth below, the Court recommends that Mr. Nour's petition be denied and this matter be dismissed without prejudice.

## I.    Background

      Mr. Nour was taken into ICE custody on December 28, 2015. Pet. ¶ 6; Lee Decl. ("First Lee Decl.") ¶ 8, ECF No. 5. He was ordered removed to Somalia, his country of citizenship, on February 1, 2016. Pet. ¶ 6; First Lee Decl. ¶¶ 8, 9. Both parties waived appeals. First Lee Decl. ¶ 9. On February 18, 2016, ICE Field Office Director Scott Baniecke issued a warrant for Mr. Nour's removal and deportation, and ICE sent a formal request to Somalia for travel documents for Mr. Nour. First Lee

Decl. ¶¶ 10-11. That same day, ICE sent Mr. Nour a "Warning for Failure to Depart" informing him of the potential criminal consequences for refusing to comply with efforts to remove him to Somalia, and explaining what he was expected to do to assist in his removal. First Lee Decl. ¶ 12. This letter was updated and resent to Mr. Nour on March 28, 2016 after changes in the travel document process for Somalia. First Lee Decl. ¶ 13.

ICE had not received a travel document for Mr. Nour by April 25, 2016, so ICE served him with a custody-review decision that explained ICE would continue to detain him beyond the expiration of the ninety-day removal period. First Lee Decl. ¶ 14. The letter indicated that ICE would continue to hold Mr. Nour because he "appear[ed] to be a threat to public safety and pose[d] a flight risk in that [he had] a significant criminal history." *See* Decision to Continue Detention, Apr. 25, 2016 ("April 2016 Decision"), at 1, ECF No. 5-9. On June 10, 2016, ICE completed a new travel document packet to be sent to Somali officials. First Lee Decl. ¶ 15. Since that time, Mr. Nour has received periodic subsequent letters regarding ICE's decision to continue detaining him that indicate his removal is likely in the foreseeable future, and that mention his continuing obligation to assist in his removal. Decision to Continue Detention, Aug. 3, 2016, at 1, ECF No. 5-10; Decision to Continue Detention, Sept. 27, 2016, at 1, ECF No. 5-11; Decision to Continue Detention, Oct. 28, 2016, at 1, ECF No. 9-1.

Mr. Nour filed his habeas petition on August 31, 2016, roughly seven months after he was ordered removed. Pet.; First Lee Decl. ¶ 17. As of mid-October 2016, the government had not received travel documents for Mr. Nour, but remained optimistic that the documents would be issued soon and that Mr. Nour would be removed within sixty days. Resp. to Pet. for Writ of Habeas Corpus ("Resp."), at 9-11, ECF No. 4; First Lee Decl. ¶¶ 19-21. Up to that point, Mr. Nour had been cooperating fully with ICE's attempt to secure his travel documents. First Lee Decl. ¶ 20.

On January 13, 2017, the Court ordered the government to provide an update regarding its efforts to remove Mr. Nour. Ord., at 2-3, ECF No. 7. In its supplemental response, the government explained that Mr. Nour ceased cooperating with efforts to remove him in December 2016. Supp. Resp. to Pet. for Writ of Habeas Corpus ("Supp. Resp."), at 1, ECF No 8; Second Lee Decl. ¶ 6, ECF No. 9. The government indicated that the Somali government modified its travel document process during the fall of 2016. Supp. Resp. at 2; Second Lee Decl. ¶ 5. As a result, the government

requested that Mr. Nour provide additional documentation to secure his travel documents, which Mr. Nour refused to do. Supp. Resp. at 2; Second Lee Decl. ¶ 6. On January 5, 2017, the government sent Mr. Nour a Notice of Failure to Comply informing him that he would remain in ICE custody until he demonstrated that he was making reasonable efforts to comply with the removal order and was cooperating with ICE's efforts to remove him. Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g), Jan. 5., 2017 ("Jan. 5 Notice"), at 1, ECF No. 9-2. Mr. Nour contends that he has fully cooperated because he accurately provided requested information about his identity and citizenship, and that noncooperation requires taking some action to impede the government's efforts to remove him. Supp. Resp. to Resp't for Writ of Habeas Corpus ("Pet.'s Supp. Resp."), at 2, ECF No. 11. To date, no travel document has been issued for Mr. Nour. Supp. Resp. at 3.

## II. The Legal Standard

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under 28 U.S.C. § 2241 is a proper method for challenging the lawfulness of continued detention by immigration authorities pending removal of an alien. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

Because Mr. Nour is representing himself in this litigation, the Court reads his petition liberally. *Prince v. Lockhart*, 971 F.2d 118, 121 (8th Cir. 1992). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Courts should also consider statements in a pro se litigant's memoranda or other filings in analyzing claims made in a habeas petition. *See Thompson v. Missouri Bd. of Parole*, 929 F.2d 396, 399 (8th Cir. 1991).

### III. Analysis

Mr. Nour raises four claims. His first claim argues that he is being held in violation of the Supreme Court's decision in *Zadvydas v. Davis*. He also argues that his continued detention violates his substantive due process rights. Because *Zadvydas* is a substantive due process decision, these claims will be considered together. The third claim in Mr. Nour's petition involves an assertion that his procedural due process rights have been violated during his detention. Additionally, in his supplemental response, Mr. Nour suggests that his continued detention violates federal statutory provisions. For the reasons set forth below, none of Mr. Nour's assertions entitles him to a writ of habeas corpus.

#### A. Substantive Due Process and *Zadvydas*

Relying on both 8 U.S.C. § 1231(a)(6) and the Supreme Court's interpretation of that provision in *Zadvydas v. Davis*, Mr. Nour argues that he must be released from custody pending his removal. He asserts that he has been detained for longer than six months and that the government has not shown that it is significantly likely to remove him in the reasonably foreseeable future. *See* Pet. ¶ 22, 24-25; Nour Supp. Resp. at 3-4.

Federal immigration law establishes a "removal period" within which the Attorney General must remove an alien who is subject to an order of removal. 8 U.S.C. § 1231(a). That window is presumptively ninety days, *id.* § 1231(a)(1)(A), though there are instances where the removal period can be extended. *Id.* § 1231(a)(6) (providing for post-removal period detention where a removable alien fails to maintain admissible nonimmigrant status, violates conditions of entry, commits certain crimes, engages in conduct that threatens national security, or whose release would present a risk to the community).

However, the Attorney General's power to continue detention beyond the ninety-day removal period pursuant to § 1231(a)(6), even if one of the conditions of § 1231(a)(6) is met, is limited. The statute does not permit indefinite detention. *Zadvydas*, 533 U.S. at 689. While immigration officials may detain an alien beyond the removal period for "a period reasonably necessary to bring about that alien's removal from the United States," that person's detention is only presumptively reasonable under § 1231(a)(6) for six months after the removal order. *Id.* at 701. Beyond that, substantive due process may require the individual's release. If the individual is not removed within the six-month period, he can secure his release by demonstrating

4

there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." *Id.* When a detained alien meets that burden, then the government must present evidence "sufficient to rebut that showing." *Id.*

It is undisputed that ICE has detained Mr. Nour beyond both the ninety-day removal period and the 180-term that is presumptively reasonable under *Zadvydas*. However, Mr. Nour has failed to meet his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future, and the record demonstrates that he cannot make that showing at this time. This is because "where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." *Ndenge v. Gonzales*, No. 07-cv-1726-MJD-JJG, 2008 WL 682091, at *2 (D. Minn. Mar. 6, 2008) (citations omitted). The government has indicated that Somalia changed its travel document process during the fall of 2016, requiring additional paperwork for repatriation including a handwritten letter from the detainee. Second Lee Decl. ¶¶ 5-6. ICE officials twice requested that Mr. Nour write the letter, and twice Mr. Nour refused to do so. Second Lee Decl. ¶ 6. The government has shown that this letter was a necessary element in securing travel documentation from the Somali government. Second Lee Decl. ¶ 7 (indicating that twenty-nine detainees were asked to write letters, and all sixteen who complied received travel documents, while none who refused did). And the government has offered circumstantial evidence that people who complied with the new requirements have all been removed. Supp. Resp. at 4-5. Mr. Nour's refusal to assist in his appears to be a direct cause of his failure to receive travel documentation.

The fact that Mr. Nour was initially cooperative with ICE's efforts to remove him does not change this calculus. A "detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) (finding detainee's lack of cooperation undermined a *Zadvydas* claim in § 1231(a)(1)(C) removal period suspension context). Because Mr. Nour "could likely effectuate his own removal (and free himself from detention) by providing the [Somali] government with the requested information," the Court cannot find he has met his burden to show there is no significant likelihood of his removal in the reasonably foreseeable future. *Id.* at 1061. Mr. Nour's obligation to assist in securing travel documentation is an ongoing one, and his failure to write the requested letter is impeding his removal.

Because he is in control of the timing of his removal, Mr. Nour cannot argue that the government has failed to meet its burden in his case. *Ndenge*, 2008 WL 682091 at *2.

Accordingly, Mr. Nour has provided no basis for concluding that he is in ICE custody in violation of the Constitution or laws of the United States under the first or second claims for relief in his habeas petition.

### B. Procedural Due Process

In his third claim, Mr. Nour argues that he is in custody of ICE officials in violation of his procedural due process rights. In the portions of the habeas petition relevant to this claim, Mr. Nour asserts the following:

> Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning aliens' custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner[] violates Petitioner's rights to procedural due process.

Pet. ¶ 27. Further, Mr. Nour alleges that after he received notice of ICE's determination that he should remain in custody in May 2016, he wrote a letter to ICE headquarters in Washington, DC, on August 3, 2016, apparently arguing that he should be released. ICE later responded that it had reviewed his custody status and determined that it "'will not release him at this time'." Pet. ¶ 18.

The Court interprets this claim as arguing that Mr. Nour's right to procedural due process entitles him to have ongoing detention decisions made by an immigration judge or other third-party rather than by ICE officials.

During deportation proceedings, aliens are entitled to due process of law under the Fifth Amendment. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (citing the same requirement in the context of removal proceedings). "When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required." *Moses v. Lynch*, No. 15-cv-4168-PAM-JJK, 2016

6

WL 2636352, at *4 (D. Minn. Apr. 12, 2016) (citing *Mareya v. Mukasey*, No. 06-cv-4525-RHK-RLE, 2007 WL 4373012, at *10-13 (D. Minn. Dec. 12, 2007)), *R. & R. adopted*, No. 15-cv-4168-PAM-JJK, 2016 WL 2596020 (D. Minn. May 5, 2016). In both *Moses* and *Mareya*, the courts concluded that by following the custody review procedures set forth in the Code of Federal Regulations, ICE provided the petitioners with the procedural protections contemplated by the Fifth Amendment. *Moses*, 2016 WL 2636352, at *4; *Mareya*, 2007 WL 4373012, at *10. Both cases rejected the claim that the custody review process was constitutionally insufficient because the petitioner was neither afforded review by a neutral decision-maker, such as an immigration judge, nor the opportunity to cross-examine witnesses. *Moses*, 2016 WL 2636352, at *4; *Mareya*, 2007 WL 4373012, at *10-12.

The same is true in this case. The respondents have established that ICE engaged in its required custody review process and determined that Mr. Nour should continue to remain in custody pending his removal. First Lee Decl. ¶¶ 14, 16, 18; Second Lee Decl. ¶¶ 4, 8. Mr. Nour has not demonstrated that ICE failed to follow the applicable regulatory procedures and framework in reaching its decision that he should be detained beyond the ninety-day removal period. Absent an indication that ICE failed to comply with its regulatory obligations in some specific way, the Court cannot find that Mr. Nour has been deprived of his Fifth Amendment right to procedural due process or that his detention violates the Constitution on that basis.

Accordingly, Mr. Nour's procedural due process claim should be denied.

### C.     Federal Statutory Claim

In his supplemental response, Mr. Nour argues that the government's January 5, 2017 Notice of Failure to Comply impermissibly attempted to retroactively suspend the already-expired removal period. Pet.'s Supp. Resp. at 3. As discussed above, much of the substance of the government's and Mr. Nour's disagreement relates to facts that occurred after the six-month period of presumptively constitutional detention was over. Mr. Nour's noncompliance with government requests for assistance in securing travel documents did not start until nearly ten and a half months after his order for removal was final, more than seven months after the end of the removal period, and more than three months after his habeas petition was filed. *See* 8 U.S.C. § 1231(a)(1)(A) (indicating the removal period is ninety days). And had Mr. Nour challenged his detention while still fully cooperating with removal

7

efforts, the Court's analysis regarding the imminence of his removal would necessarily be more searching.[1] However, Mr. Nour fails to establish that his continued detention violates the laws of the United States such that he is entitled to habeas relief.

In its January 5, 2017 notice, ICE indicated that Mr. Nour's custody status had been reviewed and that he would continue to be detained pursuant to 8 C.F.R. § 241.4(g). That regulation deals with aliens who are noncooperative during the removal period, and is closely tied to the statutory provision that permits "suspension" of the removal period when an alien fails to assist in or acts to prevent his removal. *See id.*; 8 U.S.C. § 1231(a)(1)(C). It seems clear that at the time ICE sent the letter, the removal period was long past and therefore the citation was perhaps inapposite. However, the Court need not decide whether this provision provides a basis for Mr. Nour's detention outside of the removal period because there is nothing in the record to indicate—and Mr. Nour has not shown—that ICE's original determination pursuant to 8 U.S.C. § 1231(a)(6) that Mr. Nour "appear[ed] to be a threat to public safety and pose[d] a flight risk" has changed. *See* April 2016 Decision at 1. Because Mr. Nour's continued detention on this statutory basis complies with the constitutional limitations set forth in *Zadvydas* and its progeny, Mr. Nour's statutory claim should also be denied.

## V. Conclusion

For the foregoing reasons, this Court concludes that Mr. Nour has failed to show that he is in custody in violation of the United States Constitution or any provision of federal law. Therefore, his habeas petition should be denied.

### Recommendation

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. Mr. Nour's habeas petition (ECF No. 1) be **DENIED**.

2. This matter be **DISMISSED WITHOUT PREJUDICE**.

---

[1] Indeed, if Mr. Nour resumes cooperating with the government's efforts to remove him as required and, despite his cooperation, his removal becomes not "reasonably foreseeable," nothing in this report and recommendation should be understood as precluding a future habeas petition.

Date: April 18, 2017                    s/ *Katherine Menendez*
                                        Katherine Menendez
                                        United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.